76666.0212

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MATAMOROS RESTURANTE Y CANTINA | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 5:17-CV-00037-FB |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA | § § § § | |
| Defendant | § | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, Defendant and files this Motion for Summary Judgment and shows the following:

I.
INTRODUCTION

1. Defendant seeks summary judgment on some, but not all of Plaintiff's causes of action. Specifically, Defendant will show that it is entitled to summary judgment on the following:

   a. Plaintiff's claims under the Texas Deceptive Trade Practices/Consumers Protection Act ("DTPA");
   b. Plaintiff's claims under the Texas Insurance Code (other than alleged violations of the Prompt Payment of Claims Act);
   c. Plaintiff's claim for breach of the duty of good faith and fair dealing;
   d. Plaintiff's claims that the alleged statutory violations were knowing and/or intentional.

The Plaintiff cannot meet its burden of proof on the forgoing claims and causes of action.

1

76666.0212

## II.
## FACTS

2. The following factual background is shown and supported by the affidavit of Brenda Barron attached as Exhibit "B" and the documents attached to the affidavit.

3. Restaurant Pro, Inc. is the owner of Matamoros Resturante Y Cantina ("Matamoros") located at 12844 W. Interstate 10, San Antonio, Texas. Defendant insured Matamoros under an insurance policy, covering the building, including the roof. *See* Policy, Exhibit "A".

4. On or about April 12, 2016, Matamoros sustained damage to the building as a result of hail. The claim was reported to Defendant by Farshid Djahansouzi on April 13, 2016. The claim was promptly acknowledged and assigned to claims representative Jason Babey.

5. Mr. Babey inspected the property on April 20, 2016 and confirmed the existence of hail damage. *See* Log Notes attached as Exhibit "B-1". Mr. Babey then retained Lone Star Roofing to take a core sample of the roof to determine what was below the top layer. After receiving Lone Star's report, Mr. Babey prepared an estimate for the roof, lighting and interior. The estimate totaled replacement cost of $100,020.64 with depreciation of $30,926.08 for actual cash value of $69,094.62. *See* id.; *See* also estimate attached as Exhibit "B-2".

6. The policy provides coverage on a replacement cost basis. However, under the policy, the insured is required to make repairs as a condition to receiving the replacement cost. As a result the initial payment was the actual cash value figure, less the policies $1,000 deductible, totaling $68,094.62. This amount was paid on May 23, 2016. *See* Log Notes.

7. The Plaintiff sent in estimates for the air conditioning, computer system, signs, roof and the cooler, freezer which totaled approximately $275,000. The largest item was the roof at $159,540.48. *See* email from Farshid attached as Exhibit "B-3". This estimate was prepared by

76666.0212

Presidential Roofing on behalf of the Plaintiff. *See* Records of Presidential Roofing attached as Exhibit "C".

8. Defendant retained HVACi to inspect the HVAC, freezer and coolers. HVACi determined that the cost to perform necessary repairs and replacement to the HVAC system, freezer and coolers was $50,129.85 on a replacement cost basis with depreciation of $23,684.10 for actual cash value of $26,445.75. *See* summary page of HVACi Report attached as Exhibit "B-4". The replacement cost figure is undisputed, as the Plaintiff's public adjuster utilized this figure in his estimate. *See* excerpts from Deposition of Robert Smith attached as Exhibit "D".

9. By this time, Mr. Babey had been sent to Canada to assist in the adjusting of large scale fire claims. The file was reassigned to Charles Burkett. Burkett reinspected on June 22, 2016. He revised Babey's estimate to account for the damages found by HVACi. The new estimate totaled $201,018.33 (replacement cost) with depreciation of $67,432.37 for actual case value of $133,580.96. *See* Exhibit "B-5". After removal of the deductible and prior payment, Defendant paid an additional $64,486.31. *See* Log Notes attached as Exhibit "B-1". Burkett then received information from a contractor retained by Matamoros concerning steel siding and the exterior door. He revised his estimate and paid an additional $7,485.76. *See* id.

10. Subsequently, the Plaintiff's roofer, Chris from Presidential Roofing reported additional water damage. The claim was reassigned to Anthony Taylor. Mr. Taylor inspected the building with the representative of Presidential Roofing. *See* id. Taylor agreed to certain damages pointed out by the roofer and increased the estimate to replacement cost of $225,357.96 with depreciation of $75,059.32 for actual cash value of $150,298.64. After removal of the deductible and prior payments, the balance was $9,715.77. The Plaintiff then reported that the prior checks needed to be re-issued since one of the payees, Metro Bank had released its mortgage. The prior checks were

76666.0212

voided and Defendant issued a check in the amount of $149,299.04 on November 18, 2016. *See* id. There were two other payments that had been made and the total paid on the claim was $156,290.71. *See* id. The depreciation would be recoverable if the work was completed.

11. On December 30, 2016, the Plaintiff's attorneys sent a demand letter and an estimate totaling $705,906.20. *See* Exhibit "B-7". The estimate was prepared by a Public Adjuster, Robert Smith who refers cases to the Plaintiff's attorneys and prepares estimates for them. *See* excerpt from deposition of Robert Smith attached as Exhibit "D". The lawsuit was filed eighteen (18) days after the demand and was removed to this Court. (*See* Doc. 1)

### III.
### SUMMARY JUDGMENT EVIDENCE

12. In support of its Motion for Summary Judgment, Travelers relies upon all pleadings on file with the court and upon the following exhibits attached hereto:

   A. Copy of the Dec Page of Travelers Casualty Insurance Company of America Policy Number 680-6B824297-15-42, attached hereto as Exhibit "A;"

   B. Business Records Affidavit of Brenda Barron, attached hereto as Exhibit "B;" and records attached to the affidavit;

   C. File from Presidential Roofing attached as Exhibit "C"; and

   D. Excerpts from the deposition of Robert Smith attached as Exhibit "D".

### IV.
### GROUNDS FOR SUMMARY JUDGMENT

13. The Plaintiff's First Amended Petition (Doc. 24) alleges the following causes of action:

   a. Breach of Contract;
   b. Violations of the DTPA;
   c. Violations of the Texas Insurance Code; and
   d. Breach of duty of good faith and fair dealing.

76666.0212

14. Pursuant to Federal Rule of Civil Procedure 56, Defendant will show that Plaintiff's extra-contractual claims must fail because there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. Specifically, Defendant will establish that Plaintiff cannot meet its burden of proof on the DTPA and Insurance Claims, as well as the good faith and fair dealings allegation. Defendant will also establish that there was no conduct that gives rise to a finding of "knowing" or intentional misconduct.

## V.
## ARGUMENT AND AUTHORITIES

### A. No Evidence Supporting Extra-Contractual Claims

15. "Claims for extra-contractual damages should not be a routine addition to every breach-of-policy case." *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 780 (Tex. 2006). The *Vasquez* court further held that extra-contractual damages are reserved for cases when the insurer "knew its actions were false, deceptive, or unfair." *Id.*

16. Under Texas law, extra-contractual tort claims brought under the Texas Insurance Code and the DTPA require the same predicate for recovery as a common law claim for bad faith. *See Hudgens v. Allstate Tex. Lloyd's*, 2012 U.S. Dist. LEXIS 97446, at *15 (S.D. Tex. July 13, 2012) and *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 518 (Tex. 1998). In Texas, the common law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under Chapter 541 of the Texas Insurance Code; both share the same predicate for recovery. *Tex. Mut. Ins. Co. v. Sara Child Care Center, Inc.*, 324 S.W.3d 305, 317 (Tex.App.-El Paso 2010, pet. denied); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997), See also *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 49 (Tex. 1997) (noting when there is no bad faith action on a breach of contract, there can be no liability under either the DTPA or the Insurance Code).

76666.0212

17. It is clearly established under Texas law that an insurer who can "prove that it possessed a reasonable basis for denying or delaying payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, enjoys immunity from statutory bad faith under the Texas Insurance Code." *Saunders v. Commonwealth Lloyd's Ins. Co.*, 928 S.W.2d 322 (Tex. App.—San Antonio 1996, no writ); *see also, Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597 (Tex.1993) (noting that there is no breach of good faith or insurance code if the insurer has a valid reason for denying an otherwise valid claim). An insurer is liable for breach of the duty of good faith and fair dealing "if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles,* 950 S.W.2d at 56. A bona fide coverage dispute, standing alone, cannot demonstrate bad faith. *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex. 1998). An insurer is not liable for an erroneous denial of a claim as long as a a reasonable basis for denial of the claim exists. *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex. 1995). Therefore, it is the absence of a reasonable basis to deny the claim which gives rise to extra-contractual liability. *See Lyons,* 866 S.W.2d 597.

18. Generally, an insurer will have behaved in bad faith for failure to pay a first-party claim if the insurer knew or should have known that it was reasonably clear that the claim was covered. *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997). Furthermore, the question of reasonableness is generally a fact question, but when there is no conflict in the evidence, it can be a question of law. *Id.* at 56. An insured cannot establish a claim for bad faith without offering evidence that the insurer's liability on the claim had become reasonably clear, or that there was no reasonable basis for denying the claim. *Tesoro Ref. & Mktg. Co. LLC v. Nat'l Union Fire Ins. Co.,* 2015 U.S. Dist. LEXIS 45168 (W.D. Tex. Apr. 7, 2015)(*citing Provident Am. Ins. Co. v. Castaneda,* 988 S.W.2d 189, 198 (Tex. 1998).

76666.0212

19. In the present case, Traveler's promptly inspected the insured's claim on April 20, 2016 and retained a roofing company to take a core sample of the roof. Traveler's then prepared an estimate and issued payment in the amount of $68,091.54 for the actual cash value of the damages found. After the Plaintiff provided Travelers with notice of additional damage, Travelers re-inspected the property and issued a supplemental payment of $64,486.31 for the actual cash value of the new damage. Plaintiff then reported additional damages, which caused Travelers to again re-inspect the property and issue a supplemental payment of $7,485.76 for the actual cash value of the additional damages. Travelers paid a total of $156,290.71 for the actual cash value of the damages on to Plaintiff's property and withheld depreciation to be paid pursuant to the policy once repairs were made to the property.

20. Following the last payment, the Plaintiff, through its attorneys presented a public adjuster's estimate which was on its face, unreasonable. *See* excerpts to Deposition of Robert Smith attached as Exhibit "D". For example, the public adjusters estimate includes the roof (including the HVAC system) at $255,638.34 for the main building roof and the barrel roof. The public adjuster also includes damages to the exterior on all four elevations totaling $207,907.32. *See* estimate of Robert Smith attached to his deposition excerpts which are attached as Exhibit "D". During the claim, the Plaintiff resented an estimate from Presidential Roofing (an actual contractor who could do the work), which estimated the same work at $159,540.48. *See* Exhibit "C".

21. Defendant clearly acted reasonably in declining to pay based on the inflated estimate of Robert Smith which was received eighteen days before the lawsuit. The difference in the two estimates, both presented by the Plaintiff establishes that liability did not become reasonably clear.

7

76666.0212

22. At best, this is a bona fide dispute about the extent of damage to Plaintiff's property. There is no evidence that Travelers acted in bad faith or that Travelers violated any provision of the Texas Insurance Code or DTPA with respect to Plaintiff's claim.

23. Accordingly, Travelers respectfully requests that the Court find that Traveler's handling of Plaintiff's claim was not in bad faith or in violation of the Insurance Code or DTPA, and grant summary judgment in favor of Travelers as to Plaintiff's causes of action for bad faith, violations of Chapter 541 of the Texas Insurance Code and violations of the DTPA.

**B. No "Knowing" Violation of the Texas Insurance Code**

24. Travelers also respectfully requests that the Court dismiss Plaintiff's claim that Travelers allegedly acted knowingly as that term is used in the Texas Insurance Code.

25. "Knowingly" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages under Subchapter D is based. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness. Tex. Ins. Code §541.002(1).

26. There is no evidence that Travelers violated any provision of Tex. Ins. Code Chapter 541. Even if there were such evidence which is denied, there is no evidence that Travelers did so "knowingly" as defined in the Code or intentionally. As set forth herein, this is a bona fide dispute over coverage that does not rise to the level of an Insurance Code violation or bad faith. Accordingly, Plaintiff's allegation that Travelers committed a "knowing" violation of the Texas Insurance Code and/or intentional conduct should be dismissed.

76666.0212

## VI.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, respectfully requests that this Honorable Court grant its Motion for Summary Judgment as to the causes of action referenced herein.  For these reasons, Defendant, THE TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, requests the Court to:

1. Grant its Motion for Summary Judgment; and

2. Order that the Plaintiff take nothing against Defendant, THE TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, by reason of the claims asserted for common law bad faith, violations of Chapter 541 of the Texas Insurance Code, violations of the DTPA and knowing and intentional conduct.

Respectfully submitted,

ADAMI, SHUFFIELD, SCHEIHING
    & BURNS, P.C.
9311 San Pedro, Suite 900
San Antonio, Texas  78216
Telephone (210) 344-0500
Telecopier (210) 344-7228
bscheihing@adamilaw.com

By: _____
ROBERT F. SCHEIHING
State Bar No. 17736350

ATTORNEY FOR DEFENDANT

9

76666.0212

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the above and foregoing document has been forwarded to the following counsel of record in compliance with the Federal Rules of Civil Procedure this __22__ day of September, 2017:

Derek L. Fadner
James M. McClenny
J. Zachary Moseley
MCCLENNY MOSELEY & ASSOCIATES, PLLC
411 N. Sam Houston Parkway E., Suite 200
Houston, Texas 77060
derek@mma-pllc.com
james@mma-pllc.com
zach@mma-pllc.com

                                            _____
                                            ROBERT F. SCHEIHING